MARK BRNOVICH
ATTORNEY GENERAL

CLAUDIA ACOSTA COLLINGS (021647)
PAUL E. CARTER (014140)
Assistant Attorneys General
416 W. Congress, 2nd Floor
Tucson, AZ 85701-1315
(520) 638-2800 • Fax (520) 628-6050
claudia.collings@azag.gov
paul.carter@azag.gov

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Hector Lopez, an individual, | No. CV 13-00691-TUC-DCB |
| Plaintiff, | |
| v. | |
| Charles Ryan, et al., | |
| Defendants. | |
| Enrique Montijo, an individual, | No. CV 13-01439-TUC-DCB |
| Plaintiff, | **DEFENDANTS'** |
| v. | **TRIAL MEMORANDUM**[1] |
| Charles Ryan, et al., | |
| Defendants. | |

Defendants Bennett and Swaney submit this Trial Memorandum to assist the Court with respect to the presentation of evidence at trial relating to the relief Plaintiffs will be allowed to pursue, including compensatory damages.

---

[1] This Motion in Limine is also being filed in CV13-0691 and is identical to that filing.

I.  **Background.**

- Plaintiffs contracted botulism after consuming tainted alcohol or food; the condition is not immediately diagnosed by medical personnel,
- Plaintiffs testified at length about the pain associated with their undiagnosed medical conditions,
- Plaintiffs have admitted that they misrepresented to medical staff why they thought they had become ill, stating at different times that they drank alcoholic 'hooch' and that they consumed a bad sausage,
- Plaintiffs are seen by prison medical personnel but claim either that they did not receive any medical care or that the care they received was insufficient,
- Plaintiffs ask Defendant Bennett for assistance on at least one occasion while they are sick. But since Bennett was present at least twice when escorting nurses to Plaintiffs' cell-front, and he is aware that nurses have been seeing the Plaintiffs at least twice per day at their cell fronts, he does not go directly to the medical unit, believing that they have already been seen earlier that day,
- Defendant Swaney enters the Plaintiffs' pod during an inmate disturbance, at which time they attempt to get his attention. After the disturbance concludes, Swaney confirms with staff that nurses have been regularly seeing the Plaintiffs in order to attend to their medical needs,
- In their depositions, Plaintiffs were asked how they calculated their damages, but they declined to provide meaningful answers. (*See* Lopez deposition transcript at 187 -195 and Montijo deposition transcript at 135 - 138, annexed hereto as Exhibits A and B, respectively.)
- Plaintiffs have never disclosed any evidence or proposed any way to calculate the harm Bennett and/or Swaney caused them, since they were

    already sick and had been seen by medical staff on multiple occasions before the Defendants encountered them.

- Plaintiffs have never disclosed any evidence, and certainly no medical evidence or expert testimony, that they suffered any disability, disfigurement, or loss of enjoyment of life.

**II.   Plaintiffs Have Not Disclosed Evidence that Defendants Actually Harmed Them.**

Unlike an injunction claim, an inmate's claim for damages survives his release from prison. *Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095-96 (9th Cir. 2004). However, a jury's damages award must be based upon evidence and not upon speculation, guesswork or conjecture. *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996) (concluding that a district court "must uphold the jury's finding unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork"); *see also* 9th Circuit Model Jury Instruction 5.1.

To establish "deliberate indifference" to a serious medical need, the prisoner must demonstrate: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) *harm caused by the indifference*." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (emphasis provided). An inmate plaintiff can show a defendant is deliberately indifferent under this standard "only if the official 'knows of and disregards an excessive risk to inmate health and safety.' " *Jett*, 439 F.3d at 1096 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992). Plaintiffs have not disclosed competent expert testimony or other evidence that prison medical staff was negligent in diagnosing or treating them.

Additionally, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Com'rs,* 766 F.2d 404, 407 (9th Cir.1985). A delay in treatment must have caused substantial harm in order to constitute an eighth amendment violation. *See id.* Plaintiffs have not disclosed medical evidence that the time it took for their conditions to be diagnosed or the treatment they received for their symptoms fell below the standard of care or that they required emergency attention at a time when either Defendant was aware of their situations. *Cf. Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980) (delay of six days in treating hepatitis may constitute deliberate indifference). Nor did they produce competent evidence that any delay in treatment substantially harmed Plaintiffs, considering that medical staff had admittedly been unable to diagnose their conditions. *Cf. Hunt v. Dental Department,* 865 F.2d 198, 199 (9th Cir.1989) (three month delay in replacing dentures, causing gum disease and possibly weight loss constituted eighth amendment violation). The Plaintiffs therefore cannot show that the purported delay in their diagnosis and treatment caused them cognizable harm.

The Plaintiffs have not only failed to produce any probative evidence to support a claim for actual damages against Defendants Bennett and Swaney, they have admitted that they caused themselves to contract botulism by consuming either tainted food or drink. Thus, it is undisputed that the Plaintiffs' own actions caused them harm. It is also undisputed that prison medical staff was aware that Plaintiffs were ill before Bennett or Swaney. Although the Plaintiffs blame medical staff for ignoring their complaints, they have not disclosed expert testimony that prison medical staff provided was substandard. Without evidence to support a claim that the care Plaintiffs received was substandard, they have resorted to arguing, contrary to the evidence in the record, that prison medical

staff ignored completely their complaints.  They have not, however, shown that Bennett or Swaney knew that medical personnel were not treating them at all as they now claim.

To the extent that medical personnel had difficulty diagnosing the Plaintiffs' conditions, they have disclosed no probative, expert evidence suggesting that the time it took to diagnose them with botulism was unreasonably long or that the care they received while their condition was undiagnosed was inadequate.  Likewise, they have not disclosed any medical evidence that prison medical personnel were deliberately indifferent to their serious medical needs.  Perhaps realizing that they had no evidence to support a claim that the care they received was substandard, the Plaintiffs allege instead that prison medical staff completely ignored their requests for medical assistance—all without bringing any deliberate-indifference claims against the medical staff.  It follows that Plaintiffs are acknowledging that they harmed themselves and that medical staff ignored them, exacerbating their harm.  What possible additional harm could Bennett and Swaney have caused under these circumstances?  After all, during the few isolated instances when they each may have been able to observe the Plaintiffs, the Defendants knew that they would be seen again the next time the nurses toured their pod while doing medication checks.

Plaintiffs have never disclosed anything beyond their own unfounded, self-serving speculation to support their claim for damages against Defendants.  They have steadfastly refused to disclose any evidence from which a jury could reasonably allocate any damages to the Defendants given the fact that the Plaintiffs were already sick when they encountered Bennett and Swaney, who knew they were being seen and monitored by medical staff.   Plaintiffs complain that they were not seen by a doctor.  But, it would be pure speculation to conclude that Plaintiffs would have been diagnosed sooner or that their care would have ameliorated if Bennett or Swaney had acted differently.  Plaintiffs have not identified any specific additional harm that they or medical staff did not cause.

Since the Plaintiffs should be required to present evidence of actual injuries or damages with some specificity and they have declined to do so, they should not be permitted to speculate that they incurred heretofore undisclosed additional harm as a result of Defendants' actions. And, insofar as Plaintiffs may argue that they can testify as to the additional harm they believe the Defendants caused, the Court should reject that proposition due to their failure to provide timely discovery on the issue and because their testimony would be, by its very nature, speculative. After all, they were already sick and being seen by medical staff before they encountered Bennett or Swaney.

### III. Since Montijo Was in Custody When He Filed Suit and Defendants Did Not Physically Harm Him, He Cannot Recover Damages for Emotional Harm.

With respect to Plaintiff Montijo's claims only, he was incarcerated when he brought this action. (Dkt. 1-3 at 2, ¶ 1.) Thus, although compensatory damages may generally include not only out-of-pocket expenses and other monetary harms, but also such injuries as "personal humiliation, and mental anguish and suffering," *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986), that is not the case here where the PLRA applies. Under the PLRA, to obtain damages for emotional distress, a prisoner must demonstrate physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). This provision "requires a prior showing of physical injury that need not be significant but must be more than de minimis." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *accord Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Thus, since Plaintiff Montijo has neither pleaded nor shown that anything the Defendants did caused him a physical injury which, in turn, caused him to suffer mental

or emotional harm, he should not be permitted to offer testimony or other evidence at trial relating to claimed mental or emotional injuries. Indeed, since Plaintiffs have not produced medical or any other competent evidence to support their claim that Defendants caused them emotional harm, Defendants object to their attempting to do so at trial, based on lack of foundation, lack of timely discovery, and because such evidence would be more prejudicial than probative under Fed. R. Evid. 403.

Plaintiffs have not provided written discovery or disclosed medical testimony with proper foundation indicating that they suffered from emotional harm separate and apart from that they were already suffering as a result of their undiagnosed medical condition. Thus, even if this was not a PLRA case with respect to Montijo, the Court should foreclose Plaintiffs from presenting any evidence to show that the matters at issue caused him emotional harm.

**IV.   Conclusion.**

Based on the foregoing, Defendants Bennett and Swaney respectfully submit that Plaintiffs' deliberate indifference claims against them must fail because Plaintiffs have failed to disclose evidence and will not be able to establish with sufficient specificity that Defendants actually harmed them. Thus, if the jury were to find in favor of Plaintiffs on both remaining Counts, their damages recovery should be limited to nominal damages.

RESPECTFULLY SUBMITTED this 10th day of January, 2020.

MARK BRNOVICH
ATTORNEY GENERAL

s/Paul e. Carter
CLAUDIA ACOSTA COLLINGS
PAUL E. CARTER
Assistant Attorneys General
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the __10th__ day of January, 2020, I electronically filed the foregoing Document with the United States District Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Stephen M. Weeks
WEEKS LAW FIRM PLLC
P.O. Box 126
Marana, AZ 85653-0126
*Attorney for Plaintiff Lopez*

Brian A. Laird
LAIRD LAW PLLC
3573 E. Sunrise Dr., Suite 215
Tucson, AZ 85718
*Attorney for Plaintiff Montijo*

  s/jmp
8441196

8